UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAURICE S., JR. , | ) |
| | ) |
|           *Plaintiff* | ) |
| | ) |
| v. | )   No. 1:20-cv-00027-DBH |
| | ) |
| ANDREW M. SAUL, | ) |
| *Commissioner of Social Security,* | ) |
| | ) |
|           *Defendant* | ) |

### *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability (SSD) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (i) ignored assessments by Kirsten Milliken-Zumel, Ph.D., of limitations caused by his post-traumatic stress disorder (PTSD) and Molly C. Jennings, P.A., of limitations caused by his lumbar degenerative disc disease, flat feet, and asthma, (ii) purported to adopt the mental residual functional capacity (RFC) assessment of James M. Claiborn, Ph.D., but deviated from it without explanation, (iii) relied on the opinions of two agency nonexamining consultants, J.H. Hall, M.D., and Anthony Pileggi, M.D., who did not have the benefit of review of an RFC assessment by examining physician Nelson S. Haas, M.D., and (iv) erroneously rejected the opinion of agency examining consultant Fred Fridman, D.O. *See* Itemized Statement of Specific

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Errors ("Statement of Errors") (ECF No. 11) at 12-17.  I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, Finding 1, Record at 17; that he had the severe impairments of degenerative joint disease of the right knee and PTSD, Finding 3, *id.*; that he had the RFC to perform light work as defined in 20 C.F.R. § 404.1527(b), except that he could stand and/or walk for about four hours in an eight-hour workday, push and pull at the light weight limits, occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally stoop, kneel, crouch, and crawl, could perform simple to moderately detailed tasks and work in sight of coworkers but could not perform work requiring teamwork or collaborative work, could never work with the public, and could adapt to occasional changes in the work environment, Finding 5, *id*. at 21; that, considering his age (36 years old, defined as a younger individual, on his alleged disability onset date, June 10, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 30-31; and that he, therefore, had not been disabled from June 10, 2015, his alleged onset date of disability, through the date of the decision, September 18, 2019, Finding 11, *id*. at 32.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health*

*& Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Error in Ignoring Milliken-Zumel and Jennings Assessments

The plaintiff first argues that the ALJ erred in ignoring limitations assessed by Dr. Milliken-Zumel and PA Jennings, both of whom performed compensation and pension examinations for the U.S. Department of Veterans Affairs.  *See* Statement of Errors at 13-14; Record at 626-39, 702-23.  As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 14) at 17-20, the plaintiff demonstrates no reversible error.

The plaintiff asserts that Dr. Milliken-Zumel "identified several areas of occupational and social impairment caused by PTSD symptoms, to a greater extent than was found by the ALJ" or by Dr. Claiborn, on whose opinion she relied in determining the plaintiff's mental RFC.  Statement of Errors at 13.  However, while Dr. Milliken-Zumel checked boxes indicating that the plaintiff had (i) "[o]ccupational and social impairment with reduced reliability and productivity[,]" Record at 703, and (ii) several PTSD-related symptoms, including depressed mood, anxiety, mild memory

3

loss, difficulty understanding complex commands, and difficulty in establishing and maintaining effective work and social relationships, *see id*. at 709, she did not set forth specific work-related limitations caused by the plaintiff's PTSD, *see id*. at 702-14.  The Milliken-Zumel report, hence, cannot supply the foundation for a conclusion that the plaintiff had greater mental restrictions in performing tasks and interacting with coworkers and others than those assessed by the ALJ.  *See, e.g., Brooks v. Berryhill*, No. 2:16-cv-00553-NT, 2017 WL 4119587, at *5 (D. Me. Sept. 17, 2017) (rec. dec., *aff'd* Oct. 4, 2017) (source who did not translate claimant's purported difficulties into specific limitations "did not offer an RFC opinion for the ALJ to consider").

The plaintiff next asserts that the ALJ erred in considering PA Jennings' evaluations of his lumbar spine degenerative disc disease, flat feet, and asthma.  *See* Statement of Errors at 13-14.  He argues that the error was not harmless because:

1. Although the ALJ neglected to address the impact of the plaintiff's back impairment on his functioning, PA Jennings found that the impairment required him "to be cautious when doing repetitive bending and heavy lifting[,]" *compare* Record at 17-18 *with id*. at *id*. at 723;

2. Although the ALJ assessed no environmental limitations, PA Jennings stated he should "avoid working in a very dusty environment with high levels of particulate matter" and wear a mask as needed, *compare* Finding 5, *id*. at 21 *with id*. at 639, and all three jobs on which the ALJ relied "likely . . . involve the 'high levels of particulate matter'" that PA Jennings indicated the plaintiff needed to avoid, Statement of Errors at 13-14;

3. Although the ALJ rejected the finding of Drs. Haas and Katz that the plaintiff required a 10-minute break from standing or walking each hour, *see* Record at 25, which the vocational expert (VE) testified would preclude work if the required break took the individual

4

away from the workstation, *see id*. at 56, PA Jennings assessed a similar need "to be able to take periodic sitting breaks as needed, during [the] work day, if on his feet a lot[,]" *id*. at 635.

On the first point, as the commissioner notes, *see* Opposition at 19, any error in ignoring PA Jennings' assessment of a need to be "cautious" in repetitive bending and heavy lifting is harmless because it is not a specific functional limitation, *see, e.g., Brooks*, 2017 WL 4119587, at *5. In any event, the ALJ addressed those concerns in limiting the plaintiff to only occasional stooping (bending at the waist) and a light exertional capacity (lifting/carrying no more than 10 pounds frequently and 20 pounds occasionally), *see* Finding 5, Record at 21; 20 C.F.R. § 404.1567(b) (defining light work); SSR 83-10, 1983 WL 31251, at *6 (1983) (defining stooping as "a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist").

On the second point, the commissioner correctly observes that any error is harmless because only one of the three jobs on which the ALJ relied entails exposure to atmospheric conditions. See Opposition at 19-20; Record at 31; *compare* Dictionary of Occupational Titles (DOT) (U.S. Dep't of Labor 4th ed. 1991) § 712.687-010, 1991 WL 679245 (Jan. 1, 2016) (present in job of assembler, plastic hospital products) *with id*. § 727.687-022, 1991 WL 679664 (Jan. 1, 2016) (not present in job of assembler, dry cell and battery), *id*. § 789.687-066, 1991 WL 681266 (Jan. 1, 2016) (not present in garment folder job).

Finally, on the third point, as the commissioner contends, *see* Opposition at 19, any error is harmless because the ALJ found the nearly identical June 2015 Haas opinion, assessing a need to "sit or change position up to 10 minutes for every hour of standing[,]" "inconsistent with the improvement in the [plaintiff]'s condition with physical therapy and ibuprofen, as demonstrated in subsequent treatment records," Record at 25. She deemed the Hall and Pileggi opinions, which

5

were "based on a review of update[d] medical evidence, . . . more persuasive." *Id*. The plaintiff offers no reason to doubt that the ALJ likewise would have deemed the Jennings opinion inconsistent with the longitudinal evidence of record. *See* Statement of Errors at 13-14.

### B.  Error in Deviating from Claiborn Opinion

The plaintiff next seeks remand on the basis that, while the ALJ purported to adopt the Claiborn opinion *in toto*, she deviated from it without explanation. *See* Statement of Errors at 14-15. As he observes, *see id.* at 14, while Dr. Claiborn found that he could "work in small groups (less than 10 people) but not interact with the general public[,]" Record at 1207, elaborating at hearing that he would be "reasonably able to interact with a group of coworkers and peers that w[as] not overly large in size or constantly changing" and to "interact[] with a consistent group of people over time[,]" *id*. at 45, the ALJ found that he could "work in sight of co-workers but no work requiring teamwork or collaborative work" and could "never work with the public[,]" Finding 5, *id*. at 21.

The plaintiff contends, and his counsel emphasized at oral argument, that the ALJ's limitation is *less restrictive* than that of Dr. Claiborn because it would permit him to be in sight of potentially large, changing groups of people – a situation that aggravates his PTSD symptoms. *See* Statement of Errors at 15. He argues that the error is harmful because "it is unclear whether the jobs identified in the ALJ's decision at step five based upon vocational testimony would be available with the more specific interactive limitation set forth in Dr. Claiborn's opinion[,]" *id*. at 14, warranting remand. By contrast, the commissioner characterizes the ALJ's limitation as *more restrictive* than that of Dr. Claiborn, rendering any error harmless. *See* Opposition at 15-16.

The commissioner has the better argument. Dr. Claiborn's restriction speaks to the plaintiff's ability to work and/or interact with coworkers. The ALJ's finding that he could work

6

in sight of coworkers, but not with them, is thus more restrictive than that of Dr. Claiborn, rendering any error harmless.  While the plaintiff asserts that, because of his PTSD symptoms, he was "extremely uncomfortable, anxious, and vigilant around large groups of people, whether or not he was required to have any close interaction with them," Statement of Errors at 15, he does not identify any opinion of Dr. Claiborn that his symptoms precluded him from proximity to groups of coworkers of any size.[2]

### C.  Misplaced Reliance on Hall, Pileggi RFC Assessments

The plaintiff next contends that the ALJ's reliance on the Hall and Pileggi opinions was misplaced because they did not have the benefit of a June 30, 2015, physical RFC assessment of Dr. Haas – an omission that also skewed their evaluation of the opinion of Dr. Katz, who had expressly stated that he agreed with the Haas restrictions.  *See* Statement of Errors at 15-16.  He adds that, although the ALJ evaluated the Haas and Katz opinions, she erroneously (i) found that the Haas opinion, dated June 30, 2015, was rendered on or before the plaintiff's alleged onset date of disability, June 10, 2015, and (ii) focused on Dr. Katz's statement that there was a lack of objective findings demonstrating a significant impairment when Dr. Katz indicated that the plaintiff continued to experience knee pain and adopted the permanent restrictions assessed by Dr. Haas.  *See id*. at 15-16.  He contends that these errors were not harmless because two vocational experts testified that the limitations on standing and walking set forth in the Katz and Haas opinions would preclude gainful employment.  *See id*. at 16.  I find no reversible error.

The commissioner concedes that Dr. Hall, at the initial stage of review, did not have the Haas opinion.  *See* Opposition at 13-14.  However, he represents that it was available to Dr. Pileggi

---

[2] At oral argument, the plaintiff's counsel pointed to testimony of Dr. Claiborn at page 45 of the hearing transcript; however, that testimony addresses the plaintiff's ability to *interact* with a group of coworkers that was not overly large or constantly changing, not his ability to be *in sight of* them.  *See* Record at 45.

based on his counsel's review of the electronic case folder, arguing that notations at the reconsideration stage of review that the agency did not have the Haas restrictions were merely carried over from the initial stage of review, a common occurrence. *See id*. at 13-14 & nn. 4-5; Record at 96, 99, 113. Yet, while the plaintiff's counsel conceded at oral argument that the Haas opinion was available to Dr. Pileggi, he disputed that Dr. Pileggi reviewed it, pointing out that the commissioner's notice of denial of the claim on reconsideration does not list the Haas opinion among new materials reviewed at that stage. *See* Record at 127-29.

Even assuming that Dr. Pileggi did not review the Haas opinion, I conclude that remand is unwarranted on that basis. As the commissioner observes, *see* Opposition at 13-14, both Drs. Hall and Pileggi had the benefit of review of a workers' compensation form in which Dr. Katz explicitly set forth, as his own, the limitations assessed by Dr. Haas, *see* Record at 90, 96, 113, 572. The plaintiff does not explain, and it is not self-evident, that knowledge that these were the restrictions set forth by Dr. Haas would have swayed Dr. Hall or Dr. Pileggi to include them in their RFC assessments. *See* Statement of Errors at 15-16. In any event, the ALJ addressed and discounted Dr. Haas' restrictions on the basis – unchallenged by the plaintiff – that they were "inconsistent with the improvement in the [plaintiff]'s condition with physical therapy and ibuprofen, as demonstrated in subsequent treatment records[.]" Record at 25 (citations omitted).

Turning to the second point, as the commissioner observes, *see* Opposition at 14-15, the ALJ correctly described the Haas opinion as having been rendered in June 2015, *compare* Record at 25 *with id*. at 541-45. While Dr. Haas indicated that he examined the plaintiff on June 23, 2015, *see id*. at 541, 13 days after the plaintiff's alleged onset of disability, the ALJ's error in further describing the Haas opinion as "rendered . . . at the claimant's alleged onset date or before[,]" *id*. at 25, is immaterial. As the commissioner notes, *see* Opposition at 15, the error does not undermine

the ALJ's substantive point: that the June 2015 Haas opinion did not capture improvements in the plaintiff's condition postdating that time, *see* Record at 25.

Turning to the final point, the ALJ reasonably perceived a conflict between Dr. Katz's statement that he agreed with the Haas limitations and his statement that the plaintiff did "'not have any significant impairment as he has full range of motion, no instability,'" and no "'significant degenerative changes noted on x-rays.'" *Id*. (quoting *id*. at 567) (citation omitted). She correctly noted that Drs. Hall and Pileggi described Dr. Katz as not only indicating that the plaintiff had no impairment but also articulating the basis for that conclusion. *See id*. at 25, 99, 115.

The plaintiff, hence, falls short of demonstrating reversible error in the ALJ's reliance on the Hall and Pileggi opinions.

### D.  Error in Rejecting Fridman Opinion

The plaintiff next seeks remand on the basis that the ALJ erred in characterizing the Fridman opinion as based heavily on the plaintiff's subjective complaints. *See* Statement of Errors at 16-17. I find no reversible error.

Following a March 22, 2018, examination, Dr. Fridman concluded, *inter alia*, that the plaintiff was able to sit for two hours at a time before needing a break and for up to six hours in an eight-hour workday, stand for one hour at a time before needing a break and for up to three hours in an eight-hour workday, and walk for 30 minutes at a time before needing a break and for up to two hours in an eight-hour workday. *See id*. at 1024.

The ALJ found the Fridman opinion "unpersuasive[,]" deeming it "too restrictive in light of the evidence as a whole[,]" noting that Dr. Fridman was "a one-time examiner who did not review the [plaintiff]'s medical records[,]" and characterizing Dr. Fridman's findings as

9

inconsistent with the plaintiff's "general lack of treatment in 2017, 2018, and 2019," "his mostly unremarkable findings upon examination during the same period[,]" and his "generally independent activities of daily living, including cooking, cleaning, taking his dog outside on a frequent basis, riding motorcycles, plowing snow, and going to his son's basketball games." *Id*. at 25 (citations omitted). She explained that she found the Hall and Pileggi opinions "more persuasive" and that both had "noted that Dr. Fridman's opinion relied heavily" on the plaintiff's subjective reports and was unsupported by "the totality of the evidence[.]" *Id*.

The plaintiff protests that the finding that Dr. Fridman relied heavily on subjective complaints is unsupported by substantial evidence, Dr. Fridman having (i) noted that he based his opinion on his objective examination findings, identifying 11 specific abnormal findings related to the plaintiff's right-knee impairment, (ii) described the plaintiff's "past diagnostic and surgical treatment for knee pain," and (iii) assessed less restrictive limitations than those claimed by the plaintiff. Statement of Errors at 16-17. I find no reason to disturb the ALJ's weighing of this opinion evidence.

That Dr. Fridman noted abnormalities on examination, seemingly reviewed medical records, and assessed less restrictive limitations than alleged by the plaintiff does not suffice to call into question the ALJ's adoption of the view of two experts, Drs. Hall and Pileggi, that he relied heavily on the plaintiff's subjective complaints. In any event, even if the ALJ erred in that regard, any error is harmless. She primarily discounted the Fridman opinion on the valid basis, unchallenged by the plaintiff, that it was inconsistent with the longitudinal record as a whole, including subsequent evidence of lack of treatment, mostly unremarkable findings on examination, and activities of daily living. *See* Record at 25; Statement of Errors at 16-17.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 17th day of December, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge